MUSSELMAN v GOVERNOR OF MICHIGAN

Docket No. 142142. Submitted January 7, 1993, at Detroit. Decided July 19, 1993, at 9:40 A.M.

Ann Musselman and other current or retired public school employees who have accrued or are drawing benefits from the Public School Employees' Retirement System brought an original action for mandamus in the Court of Appeals against the Governor, the State Treasurer, and others, seeking a declaration that Executive Order 1991-17, insofar as it reduced the previously enacted appropriations to the Public School Employees' Retirement System for the 1990-91 fiscal year and changed the actuarial method of funding the health benefits of that system, is violative of Const 1963, art 9, § 24 and, therefore, is void. The plaintiffs also sought a declaration that the adoption by the Legislature of 1991 PA 119, which appropriated only sufficient funds to cover health care premiums for the 1991-92 fiscal year, also violated the funding provisions of Const 1963, art 9, § 24 and is illegal and void. In addition, the plaintiffs sought a writ of mandamus compelling the defendants to transfer funds from the State School Aid Fund to the Public School Employees' Retirement System in accordance with the mandate of Const 1963, art 9, § 24.

The Court of Appeals held:

1. The Court of Appeals is not authorized to order the relief requested. Therefore, a determination whether the plaintiffs had a clear legal right to the prefunding of health care benefits or whether the defendants had a clear legal duty to provide for the prefunding of health care benefits is unnecessary.

2. Mandamus will not lie to compel the Governor to act, regardless of whether the actions sought to be compelled are discretionary or ministerial. Because the remaining defendants are not authorized to appropriate or transfer funds from the State School Aid Fund to the Public School Employees' Retire-

REFERENCES

Am Jur 2d, Declaratory Judgements, §§ 186, 187; Mandamus, §§ 22-26.

See ALR Index under Declaratory Judgements; Jurisdiction; Mandamus.

ment System, a writ of mandamus cannot be issued to compel such action.

3. The Court of Appeals cannot order the Governor to exercise his discretion under Const 1963, art 5, § 20 in a particular manner and cannot order the Legislature to appropriate funds.

4. The Court of Appeals cannot consider the plaintiffs' underlying request for a ruling that Executive Order 1991-17 is null and void. The Court does not have original jurisdiction to issue a declaratory judgment. The Court's general power, under MCR 7.216(A)(7), to enter any judgment or order or grant further or different relief as the case may require does not permit the Court to take original jurisdiction of an action seeking a declaratory judgment. MCR 2.605 does not require the Court to issue a declaratory judgment, because it is a general rule of civil procedure and cannot confer jurisdiction. Moreover, MCR 2.605 cannot supersede MCR 7.203(C), the specific rule relating to the Court's jurisdiction.

Plaintiffs' request for a writ of mandamus is denied.

CAVANAGH, J., concurring in the result, stated that the term "financial benefits" used in Const 1963, art 9, § 24 may be construed not to embrace the payment of health care premiums. However, the majority's conclusion that the Court of Appeals is without authority to order the relief requested by the plaintiffs in any event is erroneous. Although the courts have no jurisdiction to review any action performed by the Governor under the power conferred upon him either by the constitution or by legislative enactment, the Court of Appeals in this case was asked to review steps taken by the Governor that were allegedly in violation of the constitution. The courts can and will issue mandamus with regard to the Governor to enforce rights conferred by the constitution.

1. MANDAMUS — GOVERNOR — DISCRETIONARY ACTS — MINISTERIAL ACTS.

Mandamus will not lie to compel the Governor to act, regardless of whether the actions sought to be compelled are discretionary or ministerial.

2. MANDAMUS — GOVERNOR — CONSTITUTIONAL LAW.

Mandamus will not lie to compel the Governor to exercise discretion under Const 1963, art 5, § 20 in a particular manner.

3. COURTS — COURT OF APPEALS — ORDERS — LEGISLATURE.

The Court of Appeals cannot order the Legislature to appropriate funds.

4. MANDAMUS — STATE SCHOOL AID FUND — PUBLIC SCHOOL EMPLOY-
EES' RETIREMENT SYSTEM.

The Court of Appeals cannot issue a writ of mandamus ordering
the State Treasurer, the Director of the Department of Man-
agement and Budget, the Auditor General, the State Superin-
tendent of Public Instruction, or the Public School Employees'
Retirement Board to appropriate or transfer funds from the
State School Aid Fund to the Public School Employees' Retire-
ment System because those parties do not have the authority to
appropriate and transfer such funds.

5. DECLARATORY JUDGMENTS — COURT OF APPEALS — JURISDICTION.

The Court of Appeals does not have original jurisdiction to issue
a declaratory judgment; the Court's general power to enter any
judgment or order or grant further or different relief as the
case may require does not permit the Court to take original
jurisdiction of an action seeking a declaratory judgment (Const
1963, art 6, § 10; MCR 7.203[C], 7.216[A][7]; MCL 600.308; MSA
27A.308).

6. DECLARATORY JUDGMENTS — COURT RULES — JURISDICTION —
GENERAL RULES — SPECIFIC RULES.

The general rule of civil procedure regarding declaratory judg-
ments does not confer jurisdiction on the Court of Appeals to
issue a declaratory judgment in an action originating in the
Court of Appeals; the general rule does not supersede the
specific rule relating to the jurisdiction of the Court of Appeals
(Const 1963, art 6, § 10; MCR 1.103, 2.605, 7.203[C]).

*White, Beekman, Przybylowicz, Schneider & Baird, P.C.* (by *James A. White* and *Karen Bush Schneider*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Michael J. Moquin, Thomas C. Nelson,* and *Walter V. Kron,* Assistant Attorneys General, for the defendants.

Before: REILLY, P.J., and CAVANAGH and CORRI-GAN, JJ.

REILLY, P.J. In this original mandamus action, plaintiffs challenge the legality of Executive Order 1991-17 and 1991 PA 119 and seek to compel state

officials to transfer monies from the State School
Aid Fund to the Public School Employees' Retire-
ment System (Retirement System). Plaintiffs' re-
quest for a writ of mandamus is denied.

Plaintiffs are individuals who are either current
or retired public school employees who have ac-
crued or are drawing benefits from the Retirement
System. 1980 PA 300, as amended, MCL 38.1301 *et
seq.*; MSA 15.893(111) *et seq.* Plaintiffs seek a
declaration that Executive Order 1991-17, insofar
as it reduced the previously enacted appropria-
tions to the Retirement System for the 1990-91
fiscal year and changed the actuarial method of
funding the health benefits of that system, is
violative of Const 1963, art 9, § 24 and, therefore,
is void. Plaintiffs also seek a declaration that the
adoption by the Legislature of 1991 PA 119, which
appropriated only sufficient funds to cover health
care premiums for the fiscal year 1991-92, also
violated the funding provisions of Const 1963, art
9, § 24 and is illegal and void. Finally, plaintiffs
request that this Court issue a writ of mandamus
compelling defendants to transfer funds from the
State School Aid Fund to the Retirement System
in accordance with the mandate of Const 1963, art
9, § 24.

Executive Order 1991-17, which reduced general
fund-general purpose fund expenditures for the
1990-91 fiscal year by $178,914,737, was issued on
June 18, 1991, after approval of a majority of both
the House and Senate Appropriations Committees.
The portion of the executive order that affects
funds available to the Retirement System provides,
in pertinent part:

> e. *Public School Employees Retirement System*
> (1) The appropriations to the public school em-
> ployees retirement system from the school aid

fund, as provided jointly by Act 214 of the Public Acts of 1990 and Act 357 of the Public Acts of 1990, hereby are reduced by $53,795,700 GFGP/ School Aid Fund ($55,773,300 Gross) as a result of the following revision of section 41(2) of Act 300 of the Public Acts of 1980 (public school employees retirement act of 1979) as amended:

SECTION 41(2)

(2) The contribution rate for benefits payable in the event of the death of a member before retirement or the disability of a member shall be computed using a terminal funding method of valuation. The contribution rate for other benefits, including health benefits, shall be computed using an individual projected benefit entry age normal cost method of valuation. FOR THE 1990-91 STATE FISCAL YEAR, THE CONTRIBUTION RATE FOR HEALTH BENEFITS SHALL BE COMPUTED USING A CASH DISBURSEMENT METHOD. [Emphasis in original.]

1991 PA 119 was adopted by the Legislature on October 11, 1991. That provision appropriated funding for the Retirement System health care benefits in the 1991-92 fiscal year on the basis of a premium disbursement, i.e. cash disbursement, method.[1]

At the time Executive Order 1991-17 was issued and 1991 PA 119 was enacted, § 41(2) of the retirement system act provided that the contribution rate for health benefits was to be computed using an "individual projected benefit entry age normal cost method of valuation."[2] MCL 38.1341(2); MSA 15.893(151)(2).

---

[1] Plaintiffs describe the cash disbursement method as a "pay as you go" method. Under this method, only funds needed to pay the health care benefits premiums incurred for the current fiscal year are appropriated for that year.

[2] MCL 38.1341(2); MSA 15.893(151)(2) was subsequently amended by 1992 PA 158, which provides, in pertinent part:

Except as otherwise provided in this subsection, the contribution rate for other benefits, including health benefits, shall be *computed using*

Plaintiffs argue that the change in the method of funding health benefits from the entry age normal method to the cash disbursement method was unconstitutional in light of the mandate of Const 1963, art 9, § 24, which provides:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.
>
> Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities.

All the parties refer to the method of funding provided by art 9, § 24 as "prefunding" and acknowledge that the cash disbursement method does not satisfy the requirements of art 9, § 24.

However, defendants argue that art 9, § 24 does not apply because health care benefits are not "accrued financial benefits" or "financial benefits arising on account of service rendered." Defendants assert that the provisions of Executive Order 1991-17 reducing expenditures for Retirement System health benefits were justified pursuant to Const 1963, art 5, § 20. That constitutional provision declares:

> No appropriation shall be a mandate to spend. The governor, with the approval of the appropriating committees of the house and senate, shall reduce expenditures authorized by appropriations whenever it appears that actual revenues for a fiscal period will fall below the revenue estimates

---

an individual projected benefit entry age normal cost method of valuation. For the 1992-93 state fiscal year, the contribution rate for health benefits shall be computed using a cash disbursement method.

on which appropriations for that period were based. Reductions in expenditures shall be made in accordance with procedures prescribed by law. The governor may not reduce expenditures of the legislative and judicial branches or from funds constitutionally dedicated for specific purposes.

Having stated the positions of the parties, we must determine whether we have the power to grant plaintiffs' request for relief. This action for mandamus is an original action in this Court pursuant to MCR 7.203; MCL 600.4401(1); MSA 27A.4401(1).

Mandamus is an extraordinary remedy and is appropriate only when there is, in practical terms, no other remedy, legal or equitable, that might achieve the same result. *Delly v Bureau of State Lottery,* 183 Mich App 258, 260; 454 NW2d 141 (1990). Before this Court will order such relief, the plaintiff must establish (1) a clear legal right to performance of the specific duty sought to be compelled, (2) that the defendant has a clear legal duty to perform such act, and (3) that the act to be compelled is ministerial. *Id.* at 261. Mandamus will not lie to control the exercise or direction of discretion that is vested in a public official or administrative body. *Teasel v Dep't of Mental Health,* 419 Mich 390, 410; 355 NW2d 75 (1984).

We need not determine whether plaintiffs had a clear legal right to the "prefunding" of health care benefits or whether defendants had a clear legal duty to provide for the "prefunding" of health benefits because this Court is without authority to order the relief requested by plaintiffs in any event. The Supreme Court of Michigan has held that mandamus will not lie to compel the Governor to act, regardless of whether the actions sought to be compelled are discretionary or ministerial. *Sutherland v Governor,* 29 Mich 320 (1874);

*Germaine v Governor,* 176 Mich 585; 142 NW 738 (1913); *Born v Dillman,* 264 Mich 440; 250 NW 282 (1933). We disagree with the concurring opinion's conclusion that these cases are inapplicable here. This case is similar to *Born, supra,* where the plaintiffs challenged as violative of the constitution action taken by the Governor pursuant to a statute. In this case, plaintiffs assert that the Governor's action under the authority of Const 1963, art 5, § 20 violated another provision of the constitution, art 9, § 24. We find this situation to be virtually indistinguishable from that in *Born, supra.* Courts in other jurisdictions have reached the same conclusion as our Supreme Court in *Sutherland.* See also *Kelly v Curtis,* 287 A2d 426 (Me, 1972); *Boling v Rockefeller,* 52 Misc 2d 745; 277 NYS2d 168 (1967); *Rice v Draper,* 207 Mass 577; 93 NE 821 (1911). However, some courts have taken the position that a writ of mandamus may issue to compel a governor to perform a ministerial act. See 55 CJS, Mandamus, § 122, pp 203-204; *Jenkins v Knight,* 46 Cal 2d 220; 293 P2d 6 (1956); *Willits v Askew,* 279 So 2d 1 (Fla, 1973). See also *Nat'l Treasury Employees Union v Nixon,* 160 US App DC 321; 492 F2d 587 (1974) (Mandamus may issue to compel the President to perform a ministerial act. However, the court declined to exercise its discretion to issue the writ.).

In the present case, it is clear that plaintiffs are not seeking to compel the performance of a ministerial act. Rather, they seek an order compelling the Governor to exercise his discretion under Const 1963, art 5, § 20 in a particular manner. We cannot provide such a remedy.[3] Furthermore, it is

[3] Judge REILLY acknowledges that in her opinion concurring in part and dissenting in part in *House Speaker v Governor,* 195 Mich App 376, 396; 491 NW2d 832 (1992), she agreed with the majority's decision that the Governor was not immune from a suit in which the

not within our province to order the Legislature to appropriate funds. *City of Jackson v Comm'r of Revenue,* 316 Mich 694, 719-720; 26 NW2d 569 (1947); *Kosa v Dep't of Treasury,* 78 Mich App 316, 318; 259 NW2d 463 (1977), modified in part sub nom *Kosa v State Treasurer,* 408 Mich 356; 292 NW2d 452 (1980).

Although we cannot compel the Governor or the Legislature to act in this case, the executive and legislative branches of government are not free to usurp or abuse their powers. As Justice COOLEY explained in *Sutherland*:

> Our government is one whose powers have been carefully apportioned between three distinct departments, which emanate alike from the people, have their powers alike limited and defined by the constitution, are of equal dignity, and within their respective spheres of action equally independent. One makes the laws, another applies the laws in contested cases, while the third must see that the laws are executed. This division is accepted as a necessity in all free governments, and the very apportionment of power to one department is understood to be a prohibition of its exercise by either of the others. The executive is forbidden to exercise judicial power by the same implication which forbids the courts to take upon themselves his duties.
>
> It is true that neither of the departments can operate in all respects independently of the others, and that what are called the checks and balances of government constitute each a restraint on the rest. . . .

---

plaintiffs sought declaratory and injunctive relief. Mandamus was not an issue in that case. Nevertheless, after thoroughly researching the issue presented in this case, Judge REILLY is of the opinion that, pursuant to the authority cited herein, this Court is without the authority to enjoin or compel the actions of the Governor and any suggestion to the contrary was error. Judge REILLY continues to adhere to the other views expressed in her dissent in *House Speaker v Governor, supra.*

But in each of these cases the action of the department which controls, modifies, or in any manner influences that of another, is had strictly within its own sphere, and for that reason gives no occasion for conflict, controversy or jealously [sic]. The Legislature in prescribing rules for the courts, is acting within its proper province in making laws, while the courts, in declining to enforce an unconstitutional law, are in like manner acting within their proper province, because they are only applying that which is law to the controversies in which they are called upon to give judgment. It is mainly by means of these checks and balances that the officers of the several departments are kept within their jurisdiction, and if they are disregarded in any case, and power is usurped or abused, the remedy is by impeachment, and not by another department of the government attempting to correct the wrong by asserting a superior authority over that which by the constitution is its equal. [*Sutherland, supra* at 324-325.]

We also conclude that, under the circumstances presented in this case, mandamus may not issue against the remaining defendants. Plaintiffs ask us to compel the transfer of additional funds from the State School Aid Fund to the Retirement System in order to cover prefunding of health care benefits. However, plaintiffs have not provided, and our research has not revealed, authority to support a finding that any of the remaining defendants, the Treasurer, the Director of the Department of Management and Budget, the Auditor General, the State Superintendent of Schools, or the Public School Employees' Retirement Board, are empowered with the authority to appropriate or transfer funds from the State School Aid Fund to the Retirement System.

We disagree with plaintiffs' assertion that *Kosa, supra,* is controlling in this case. In *Kosa,* this

Court issued a writ of mandamus requiring the Public School Employees' Retirement Board to perform a clear legal duty, i.e., to cease the internal practice of using current service funds to pay accrued unfunded pension benefit liabilities contrary to Const 1963, art 9, § 24. 78 Mich App 316. However, this Court acknowledged that it did not have the power to enter a writ requiring the Legislature to reduce appropriations of nonconstitutionally protected items in order to create monies to insure the proper funding of the Retirement System. In *Kosa,* the Supreme Court determined that the Court of Appeals properly issued the writ to the board, but because legislation had been enacted subsequently that ensured that the mandate of art 9, § 24 was met, the writ was held to be no longer necessary. 408 Mich 383. We believe that, in this case, the concurring opinion's reliance on the language of the Supreme Court in *Kosa* to support the conclusion that mandamus may issue against the Governor is misplaced. The Supreme Court was not reviewing the action of the Governor, but the actions of members of the executive branch.

The circumstances presented in *Kosa* are different from those presented in this case. In *Kosa,* the retirement board was using funds already allocated to the Retirement System in a manner contrary to the mandates of Const 1963, art 9, § 24. Thus, the proper remedy was for this Court to order the board to carry out its duties in compliance with the constitutional requirements. However, in this case, plaintiffs seek an increase in the amount of funds appropriated to the Retirement System from the State School Aid Fund.* The retirement board, the State Superintendent of Schools, and the executive branch defendants do not have the authority to make such an appropria-

tion. We cannot compel these defendants to do that which they have no authority to do. Therefore, we deny the request for mandamus.

Having reached that conclusion, we must determine whether this Court may consider plaintiffs' underlying request for a ruling that Executive Order 1991-17 is null and void. We conclude that we cannot.

Although plaintiffs seek a form of declaratory relief, they have not asked for a declaratory judgment. The ultimate relief sought is a mandate to compel defendants to transfer funds to the Retirement System.

This Court has original jurisdiction over extraordinary writs, such as mandamus, but the jurisdiction is discretionary. MCL 600.4401(1); MSA 27A.4401(1); MCR 7.203(C)(2). We have no original jurisdiction to issue a declaratory judgment. Const 1963, art 6, § 10; MCL 600.308; MSA 27A.308; MCR 7.203(C). We do not believe the general power under MCR 7.216(A)(7) to "enter any judgment or order or grant further or different relief as the case may require" permits this Court to take original jurisdiction of an action seeking a declaratory judgment. Compare MCR 7.316(A)(7). Compare also *Wayne Circuit Judges v Wayne Co,* 383 Mich 10, 19-20; 172 NW2d 436 (1969), modified in part 386 Mich 1; 190 NW2d 228 (1971), and *BCS Life Ins Co v Comm'r of Ins,* 152 Mich App 360, 372; 393 NW2d 636 (1986), which involved appeals from decisions initially rendered in the trial courts.[4] Nor do we conclude that MCR 2.605 requires us to issue a declaratory judgment. Because

[4] In a recent opinion, *Paschke v Retool Industries (On Rehearing),* 198 Mich App 702, 706; 499 NW2d 453 (1993), a panel of this Court held that it was authorized to address an issue not raised by the appellant. In doing so the Court stated:

Where, as in this case, a particular result is commanded by

it is a general rule of civil procedure, the rule cannot confer jurisdiction. Const 1963, art 6, § 10. Moreover, the rule cannot supersede MCR 7.203(C), which is the specific rule relating to this Court's jurisdiction. MCR 1.103. Consequently, we decline to address plaintiffs' request for declaratory relief.

Plaintiffs' request for a writ of mandamus is denied.

CORRIGAN, J., concurred.

CAVANAGH, J. *(concurring)*. I concur in the result reached by the majority only because I am convinced that the framers of the constitution did not have health care premiums in mind when they adopted Const 1963, art 9, § 24. Consequently, a definition of "financial benefits" that does not embrace the payment of health care premiums would not present a constitutional problem.

I disagree, however, with the majority's conclusion that "this Court is without authority to order the relief requested by plaintiffs in any event." *Ante* at 662. The three cases cited by the majority to support this conclusion all stand for the proposition that the courts of this state "have no jurisdiction to review any action performed by a governor under the power conferred upon him either by the Constitution or legislative enactment." *Born v Dillman,* 264 Mich 440, 444; 250 NW 282 (1933); *Germaine v Governor,* 176 Mich 585, 588; 142 NW 738 (1913); *Sutherland v Governor,* 29 Mich 320,

well-settled principles of adjective law, the Supreme Court has indicated that even jurisdictional, let alone procedural, barriers will not stand in the way of achieving the proper outcome.

We believe this statement to be dicta. Further, we do not read this statement as a ruling that this Court may assume jurisdiction that is not conferred by law.

323 (1874). In such a setting, the possibility of a collision between the executive and legislative departments of the government is of grave concern. See *Dillman, supra* at 448.

However, in this case, we have not been asked to review any action of the Governor that was undertaken under power conferred upon him either by the constitution or legislative enactment. We were asked to review steps taken by the Governor that were allegedly in violation of the constitution. In that context, "[a]s regards the Executive, . . . the courts can and will issue mandamus to enforce rights conferred by the 1963 Constitution." *Kosa v State Treasurer,* 408 Mich 356, 383; 292 NW2d 452 (1980).